UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

HAMED JOSEPH,

        Petitioner,

v.

KEVIN RAYCRAFT et al.,

        Respondents.

Case No. 1:26-cv-1680

Honorable Paul L. Maloney

_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.)

In an order entered on May 28, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on June 2, 2026, (ECF No. 5), and Petitioner filed his reply on June 8, 2026, (ECF No. 7).

## II.     Relevant Factual Background

Petitioner was born in what is now South Sudan. Op., *Joseph v. Raycraft* (*Joseph I*), No. 1:26-cv-672 (W.D. Mich. Apr. 6, 2026), (ECF No. 6). Petitioner reports that he is "a countryless individual with no citizenship anywhere and no country willing to accept [him]." (Pet., ECF No. 1, PageID.6.) Petitioner has had a final order of removal since 2009. (*See* Pet., ECF No. 1, PageID.6; Wynns Decl. ¶ 9, ECF No. 5-1, PageID.26.)

On January 20, 2010, ICE Enforcement and Removal Operations (ERO) first detained Petitioner in an effort to effectuate Petitioner's removal. (Wynns Decl. ¶ 10, ECF No. 5-1, PageID.26.) However, the Sudanese government refused to communicate with ERO and, on January 26, 2011, ERO released Petitioner from custody on an order of supervision. (*Id.* ¶ 12, PageID.27.) Since that time, ERO has detained Petitioner and attempted to remove him to Sudan many times with no success. (*See* Pet., ECF No. 1, PageID.6; Wynns Decl. ¶¶ 10–11, ECF No. 5-1, PageID.26–27.)[1]

Petitioner has been in ICE detention since June 3, 2025. (Pet., ECF No. 1, PageID.6.) Sudan has repeatedly denied Petitioner travel documents to effect removal. (Wynns Decl. ¶ 33, ECF No. 5-1, PageID.29.) Since December 17, 2025, ICE ERO headquarters (HQ) has been "working on a 3rd country removal" because "[Petitioner] has no status in any other country." (*Id.* ¶ 33, PageID.29.) ERO followed up with HQ on February 13, 2026, and March 4, 2026, on the status of the third country removal, but did not receive any response. (Wynns Decl. ¶¶ 35–36, ECF No. 5-1, PageID.29.)

---

[1] The details of these past removal attempts are detailed in the Court's opinion in *Joseph I*, Op. (W.D. Mich. Apr. 6, 2026), (ECF No. 6), and the declaration of ICE ERO deportation officer Lauren Wynns in this case, (Wynns Decl. ¶¶ 4–39, ECF No. 5-1, PageID.25–30).

This is Petitioner's second petition for a writ of habeas corpus. On February 27, 2026, Petitioner filed his first habeas petition in *Joseph I*. In *Joseph I*, the Court denied the petition on April 6, 2026, finding that Petitioner's removal "remains significantly likely in the reasonably foreseeable future." Op. & Jud., *Joseph I*, (W.D. Mich. Apr. 6, 2026), (ECF Nos. 6 & 7).

Since this Court's decision in *Joseph I*,

> [b]etween March 13, 2026 – May 27, 2026, DET ERO sent multiple follow up emails to EOR HQ inquiring about the status of the continued detention letter (CDL) and third country removal. ERO HQ responded that they were reviewing the case and that [Petitioner] is on an internal third country removal tracker.

(Wynns Decl. ¶ 37, ECF No. 5-1, PageID.29–30.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Pet., ECF No. 1, PageID.6; Resp., ECF No. 5, PageID.18.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (*See* Pet., ECF No. 1, PageID.6.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful

and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).[2] (*See* Resp., ECF No. 5, PageID.20.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in 2009. The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[3] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

---

[2] Although Respondents indicate that Petitioner has past criminal convictions, Respondents do not assert that they are currently detaining Petitioner under any mandatory detention provisions due to Petitioner's past criminal convictions.

[3] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

In this case, Petitioner was most recently taken into custody by ICE on June 3, 2025 (Pet., ECF No. 1, PageID.6), and as of June 3, 2026, Petitioner has been in custody for one consecutive year. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because he has had a final order of removal since 2009, and Respondents continue to be unable to remove Petitioner, as demonstrated by Respondents' repeated inability to acquire travel documents for Petitioner. In response, Respondents assert only that "Respondents have diligently pursued the third country removal since this Court's decision in *Joseph I*." (Resp., ECF No. 5, PageID.21.)

In *Joseph I*, the Court denied the petition, reasoning that, while two months had passed since HQ provided an update concerning efforts to coordinate removal to a third country, that was "not unreasonably long" as of April 6, 2026. Op., *Joseph I*, (W.D. Mich. Apr. 6, 2026), (ECF No. 6.) Two additional months have now passed without any notable progress. ICE HQ has indicated only that it was "reviewing the case" and that Petitioner is on an "internal third country removal tracker." (Wynns Decl. ¶ 37, ECF No. 5-1, PageID.29–30.) There is no indication that a third country has been identified or that ICE HQ has had any communications with a third country likely to accept Petitioner.

In summary, Respondents have been unable to acquire a travel document to effect Petitioner's removal to Sudan since 2010 and have been unable effect Petitioner's removal to a third country since December 17, 2025. Under these circumstances, the Court concludes that there is "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* "Respondents acknowledge that there has been some delay in obtaining travel documents." (Resp., ECF No. 5,

PageID.20.) However, Respondent assert "this delay alone is not a basis for concluding that removal is not likely in the reasonably foreseeable future." (*Id.*) Petitioner has been detained for over a year, six months of which ICE ERO has spent attempting third country removal. As the Court explained in *Zadvydas*, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. Here, Respondents fail to provide the Court with any indication that removal is significantly likely, let alone that it would occur in what would now be a "reasonably foreseeable future" for an individual already detained for over a year. Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V.    Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

### Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions that existed under Petitioner's prior order of supervision. The Court will also order Respondents to file a status report

within five days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.


Dated:   June 24, 2026                              /s/ Paul L. Maloney
                                                             Paul L. Maloney
                                                             United States District Judge